THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACK JAY TWITTY, Defendant-Appellant.

(No. 74-26; )

Second District (1st Division)—February 25, 1975.

Berry & Simmons, of Rockford (Robert L. Thorsen, of counsel), for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Gary R. Kardell, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Jack Jay Twitty, the defendant herein, was found guilty in a jury trial of driving while his license had been revoked, in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 6—303) and was sentenced to 90 days' periodic imprisonment and 1 year of probation. On appeal, defendant contends: (1) that the trial court erred in refusing to allow certain testimony into evidence, and (2) that his sentence was unduly severe.

On March 10, 1973, Trooper Patrick L. Carrigan of the Illinois State Police observed a 1963 automobile pushing a 1957 pickup truck into a service station. The trooper drove his vehicle into the service station, advised the driver of the automobile that it was illegal to push a vehicle in Illinois and asked the driver for his license. The driver, the defendant herein, produced a temporary driver's permit which had been issued on June 7, 1972, and which was then expired. Trooper Carrigan radioed headquarters and was advised that the defendant's license had been revoked. The defendant indicated his cognizance of the fact that his permit had long since expired and that his license had been suspended. The defendant advised the trooper of his belief that his attorney had taken care of the matter. The trooper then issued a citation and complaint charging defendant with driving while his license had been revoked.

At trial the State offered, *inter alia,* the testimony of Trooper Carrigan; the temporary permit which the defendant was carrying when charged; a certificate of the Secretary of State which stated that the defendant did not have a valid license or permit on March 10, 1973, the date in question; and an order of revocation dated June 15, 1972, issued by the Secretary of State. The order of revocation indicated that the defendant's license had been revoked due to a March 21, 1972, conviction for unlawful use of license and that notice of the revocation had been mailed to the defendant on June 13, 1972.

The defendant offered the testimony of one Frank Vella, an attorney, who indicated that the defendant had paid Vella $600 and still owed $400 for services in connection with obtaining a driver's license for the defendant. Vella testified that he, in fact, obtained a license for the defendant in early June, 1972, and that that license would be valid for 1 year. This license was not introduced into evidence. The defendant, his wife and his mother also testified. This testimony, in substance, indicated that the defendant had not received notice of the June 15, 1972, revocation. The defendant and his wife further testified that defendant had spoken to a State inspector at the Secretary of State's office in Rockford in May, 1972. The inspector apparently indicated that the 30-day permit which the defendant was then using would be valid until his permanent driver's license, which defendant testified he had applied for, was received in the mail. Defendant returned to the Secretary of State's office in early June, 1972, and his permit was then renewed. Defendant testified that the inspector telephoned an office in Springfield and then advised defendant that it was alright to continue to drive on the temporary permit until the permanent license could be issued.

The defendant's first contention on appeal is that the trial court erred in excluding certain testimony which defense counsel attempted to elicit from Trooper Carrigan. In his offer of proof in chambers, counsel revealed that his objective was to inform the jury that Trooper Carrigan was advised over his radio via headquarters that the computer records in Springfield showed that defendant had a discretionary revocation dated May 5, 1972, and a financial responsibility revocation dated May 21, 1972. The purpose of this evidence was to bring into question the accuracy of that portion of the certificate of the Secretary of State which stated that notice of the June 15, 1972, revocation had been mailed to defendant on June 13, 1972. Simply stated, defendant was attempting to show that he did not receive a notice of revocation.

■■■ In our view, the proffered testimony was properly excluded because it was immaterial. Immaterial evidence is evidence which does not relate to an issue in the case. In this case only two issues were

involved; first, whether defendant committed the act of driving a motor vehicle on a public highway; and second, whether at that time defendant's driver's license was suspended or revoked. (*People v. Strode* (1973), 13 Ill.App.3d 697, 300 N.E.2d 323; *People v. Espenscheid* (1969), 109 Ill.App.2d 107, 249 N.E.2d 866.) Whether defendant had notice of the revocation is not an issue presented. In *People v. Strode, supra,* defendant contended, on appeal from a conviction for driving while his license was revoked, that it was error to exclude from evidence copies of two letters mailed by the Secretary of State. The letters, one of which contained an order extending the period of revocation of defendant's driver's license, had been mailed within 1 week of each other and had been sent to different addresses. From his, defendant argued that the notices required by sections 6—209 and 6—211 of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, pars. 6—209, 6—211) had not been given and that, therefore, the State had failed to prove a necessary element of the offense, that is, defendant's knowledge of the revocation. The court rejected this contention and in so doing stated:

"Only two factors are required to establish guilt in a violation of the subject statute, that is, the act of driving a motor vehicle on a public highway and the fact of the suspension of the driving license. (*People v. Dillingham,* 111 Ill.App.2d 161, 249 N.E.2d 294.) The defendant's intent, knowledge, moral turpitude, or motive is immaterial on the question of guilt. The only intention necessary to render a person liable to a penalty for violation of the automobile law is the doing of the act prohibited. (*People v. Espenscheid,* 109 Ill.App.2d 107, 249 N.E.2d 866.) The exhibits rejected have no bearing on this case * * *. His argument that these exhibits have any bearing upon his violation of the statute under the circumstances stated in this record is purely an abstract philosophy with no bearing on the issue." (13 Ill.App.3d 697, 698-99, 300 N.E.2d 323, 325.)

We agree with the above analysis and accordingly find that the court did not err in excluding the trooper's testimony involved herein.

In this regard, we also note that defendant does not contend that his license was not revoked but only that there was some confusion in the Secretary of State's office as to when his license was revoked. The trooper testified that the defendant stated that he was aware that his permit had expired and that his license had been suspended. Defendant did not attempt to refute this testimony.

Defendant's second contention is that his sentence of 90 days' periodic imprisonment and 1 year of probation was unduly severe. The statute (Ill. Rev. Stat. 1973, ch. 95½, par. 6—303) provides that an offender

shall be guilty of a Class A misdemeanor and shall be imprisoned for not less than 7 days. A Class A misdemeanant under the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*) is subject to imprisonment for any term less than 1 year and a fine not to exceed $1,000.

At the sentencing hearing, the trial judge was advised that in 1966 and again in 1970 the defendant was convicted of driving while his license had been revoked. The first conviction resulted in a 10-day jail sentence and the second resulted in 2 years' probation conditioned upon 60 days' imprisonment. The defendant's record also indicated a 1967 conviction for grand theft for which defendant received 3 years' probation and a 1969 conviction resulting in a fine for driving in violation of restrictions. On defendant's behalf, counsel argued that since 1970 defendant has altered his lifestyle. The trial judge was advised that defendant has been divorced from his first wife and obtained custody of his two children. He has remarried and now has three children, one being born of his second marriage. Defendant has attended school and become a barber. In addition, counsel argued that defendant was under the impression that his license had been taken care of by his attorney, which was somewhat supported by the testimony concerning the substantial sum paid to the attorney, and that he did not have notice of the instant revocation. The trial judge then proceeded to pronounce sentence.

The general rule in Illinois regarding a claim that a sentence imposed is excessive was stated by the Illinois Supreme Court in *People v. Fox* (1971), 48 Ill.2d 239, 251, 269 N.E.2d 720, 728, as follows:

> "This court has consistently held that where it is claimed that the punishment imposed is excessive, although within the limitations prescribed by the legislature, that sentence should not be disturbed unless it is greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscriptions of section 11 of article II of the Illinois constitution [section 11 of article I of the 1970 Illinois constitution] which requires that all penalties should be proportioned to the nature of the offense."

■■ The sentence imposed herein was within the limits prescribed by law. The trial judge considered the same arguments of defense counsel regarding sentencing as are presented herein and in addition had an opportunity superior to that of this court to hear the testimony of the witnesses, observe their demeanor and make a sound determination as to the punishment to be imposed. Furthermore, the offense herein involves a violation of law pertaining to motor vehicles and the protection of public safety. The punishment imposed was proportioned to the nature of the offense and consistent with the purpose and spirit of the law. Based

1070

upon the record presented herein, the applicable judicial standards of review and the public policy involved, we cannot stay that the trial court abused its discretion in sentencing the defendant.

Accordingly, the judgment below is hereby affirmed.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.