# Illinois Official Reports

## Supreme Court

---

### *People v. Elliott*, 2014 IL 115308

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID K. ELLIOTT, Appellee. |
| Docket No. | 115308 |
| Filed | January 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Rescission of the statutory summary suspension of a driver's license is not retroactive and does not preclude a motorist who drives on a suspended license from being convicted of that offense if he does so before that rescission is entered. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Perry County, the Hon. James W. Campanella, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and David N. Stanton, State's Attorney, of Pinckneyville (Michael A. Scodro, Solicitor General, and Michael M. Glick and Joshua M. Schneider, of Chicago, and Patrick Delfino, Stephen E. Norris and Rebecca E. McCormick, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Edward W. Unsell, of Unsell & Schuman, of East Alton, and Donald J. Ramsell, of Ramsell & Associates, LLC, of Wheaton, for appellee.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, David Elliott, was convicted of driving on a suspended license (625 ILCS 5/6-303 (West 2008)). He appealed, arguing that the conviction was improper because the statutory summary suspension upon which it was based had been rescinded. The appellate court agreed and vacated defendant's conviction. 2012 IL App (5th) 100584. We now reverse the appellate court and reinstate the conviction.

¶ 2                                    BACKGROUND

¶ 3    On August 26, 2009, defendant was arrested in Jackson County for driving under the influence (625 ILCS 5/11-501 (West 2008)). In connection with that arrest, defendant was also given notice of the statutory summary suspension of his driver's license (625 ILCS 5/11-501.1 (West 2008)). On September 1, 2009, defendant filed a petition to rescind the summary suspension.

¶ 4    On October 11, 2009, defendant's statutory summary suspension commenced. Two days later, on October 13, 2009, defendant was pulled over in Perry County and issued a citation for driving on a suspended license (625 ILCS 5/6-303 (West 2008)).

¶ 5    On October 19, 2009, the circuit court of Jackson County entered an order granting defendant's petition to rescind the statutory summary suspension. Four days later, on October 23, 2009, the Illinois Secretary of State entered a notice and order of rescission, thereby removing the statutory summary suspension from defendant's driving record.

¶ 6 Thereafter, defendant filed a motion in the circuit court of Perry County seeking to dismiss the pending citation for driving on a suspended license. In support, defendant argued that, because the circuit court of Jackson County had rescinded the statutory summary suspension upon which the driving on a suspended license citation was based, that citation no longer had a valid legal basis and therefore had to be dismissed. The circuit court of Perry County rejected defendant's argument and denied the motion to dismiss. A bench trial followed, and defendant was found guilty of driving on a suspended license.

¶ 7 Defendant appealed, and the appellate court reversed. 2012 IL App (5th) 100584. In doing so, the appellate court noted that, under section 2-118.1(b) of the Illinois Vehicle Code (the Code) (625 ILCS 5/2-118.1(b) (West 2008)), a trial court has only two dispositional options when it comes to a statutory summary suspension—it may "rescind" the suspension or it may "sustain" the suspension. 2012 IL App (5th) 100584, ¶ 15. From there, the appellate court explained that "[t]he act of rescinding is not simply to terminate." *Id.* ¶ 16. Rather, "[b]oth common usage and the operation of the term in legal proceedings impute an intention to undo an action so that it never existed." *Id.* Consequently, when the circuit court of Jackson County rescinded defendant's statutory summary suspension in this case, that suspension did not simply terminate going forward; rather, it became as though it never happened. And because the statutory summary suspension never happened, there was no longer any valid basis for charging defendant in Perry County with driving on a suspended license. Accordingly, the appellate court reversed the circuit court of Perry County's judgment and vacated defendant's conviction. *Id.* ¶ 42.

¶ 8 The State appealed to this court, and we allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

ANALYSIS

¶ 9

¶ 10 Driving on a suspended license is committed when a person "drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license *** is revoked or suspended as provided by [the Code]." 625 ILCS 5/6-303(a) (West 2008). Here, no one disputes that the statutory summary suspension of defendant's driver's license commenced on October 11, 2009. Nor does anyone dispute that, just two days later, and six days prior to the circuit court of Jackson County's order rescinding defendant's statutory summary suspension, defendant was pulled over in Perry County and charged with driving on a suspended license. In other words, no one disputes that the charge in this case arises from conduct that occurred *after the commencement of* but *before the rescission of* defendant's statutory summary suspension. The only issue, then, is whether the subsequent order of rescission renders that charge invalid. We hold that it does not.

¶ 11 The issue before us is one of statutory construction. When construing a statute, this court's primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning. *People v. Lloyd*, 2013 IL 113510, ¶ 25. In determining the plain meaning of the statute, we consider both the subject the statute addresses and the legislative

- 3 -

purpose in enacting it. *Id.* Because the construction of a statute is a question of law, our review is *de novo*. *Id*.

¶ 12   As both parties recognize, the key to resolving the issue at hand is ascertaining what the legislature intended when it deployed the term "rescind" in section 12-118.1 of the Code. Unfortunately, the legislature provides us with little guidance on this question. Though section 1 of the Code contains an extensive catalog of defined terms, "rescind" is not among them. At the same time, "rescind" is a term that enjoys numerous meanings both inside and outside the legal context, and consequently we cannot simply presume that the legislature intended the term's "commonly understood" meaning, as such a meaning does not exist. We are therefore left no choice but to consider the range of possible definitions for "rescind" and assess which of these definitions best comports with the public policy purpose of the statutory summary suspension law, as this court has understood it.

¶ 13   Beginning with the dictionary definitions, we see quickly that "rescind" can have either prospective or retroactive meaning, depending upon the particular definition and the context. Webster's, for example, defines "rescind" as both "to do away with **:** take away **:** REMOVE" and "to abrogate (a contract) by tendering back or restoring to the opposite party what one has received from him." Webster's Third New International Dictionary 1930 (2002). The first of these definitions clearly connotes an act with only prospective effect, while the second of these definitions connotes an act with retroactive effect. Similarly, Webster's defines "rescission" as both "an act of cutting off" and "an act of rescinding, annulling, or vacating or of cancelling or abrogating (as by restoring to another party to a contract or transaction what one has received from him)." *Id*. Again, the first of these definitions clearly connotes an act with only prospective effect, while the second of these definitions connotes an act with retroactive effect. Finally, we see that Black's Law Dictionary defines "rescind" both as "abrogate," a term that suggests retroactive effect, and "cancel," a term that suggests prospective effect. Black's Law Dictionary 1420 (9th ed. 2009). In short, rather than resolve the issue at hand, the dictionaries simply underscore the problem.

¶ 14   In the same way, we see that the Illinois legislature is inconsistent in its use of the term "rescind," sometimes intending a retroactive meaning while other times intending only a prospective meaning. For example, section 5(b) of the Life Care Facilities Act provides that:

> "any person entering into [a life care contract] shall have a period of 14 days beginning with the first full calendar day following the execution of the contract, or the payment of an initial sum of money as a deposit or application fee, or receipt of the financial disclosure statement, whichever occurs last, within which to rescind the life care contract without penalty or further obligation. In the event of such rescission, all money or property paid or transferred by such person shall be fully refunded." 210 ILCS 40/5(b) (West 2008).

Clearly, in this context, "rescind" is meant to have a *retroactive* meaning, as the consequence of a rescission is to undo the life care contract in its entirety and to restore the parties to their previous positions as if the contract had never been executed. By contrast, in section 108A-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/108A-1 (West 2008)), the legislature uses the term "rescind" in a way that just as clearly is meant to have only a *prospective*

- 4 -

meaning. That section, which governs the authorization for use of eavesdropping devices by law enforcement, states:

> "The Chief Judge of the circuit may assign to associate judges the power to issue orders authorizing or approving the use of eavesdropping devices by law enforcement officers or agencies in accordance with this Article. After assignment by the Chief Judge, an associate judge shall have plenary authority to issue such orders without additional authorization for each specific application made to him by the State's Attorney *until such time as the associate judge's power is rescinded by the Chief Judge.*" (Emphasis added.) 725 ILCS 5/108A-1 (West 2008).

In this context, "rescind" is clearly meant to have only a prospective meaning, as the legislature's intent is not to retroactively strip a duly assigned associate judge of his or her authority to issue eavesdropping orders, thereby invalidating any such orders that were entered during the time that the judge possessed such authority. Rather, the obvious intent of this provision is to remove that authority *going forward*, so that no further eavesdropping orders are entered without the express approval and oversight of the chief judge.[1]

¶ 15 So once again we see that, depending upon the context, and even within the pages of the Illinois Compiled Statutes itself, "rescind" can have either a retroactive meaning or a prospective-only meaning. The challenge for us, then, is to determine which of these two meanings the legislature intended in the context of statutory summary suspensions—the retroactive one, as in section 5 of the Life Care Facilities Act, or the prospective-only one, as in section 108A-1 of the Code of Criminal Procedure. For several reasons, we are convinced it is the prospective-only one.

¶ 16 To begin with, a prospective-only reading of "rescind" best comports with the public policy that informs the statutory summary suspension statute, as previously expressed by this court. Section 11-501.1 of the Code authorizes the Secretary of State to summarily suspend the driver's license of any motorist arrested for DUI who refuses to submit to chemical testing, tests above the legal alcohol concentration limit, or tests positive for an intoxicating substance. 625 ILCS 5/11-501.1(d) (West 2002). In *People v. McClure*, 218 Ill. 2d 375, 379 (2006), this court explained that "the issuance of a statutory summary suspension protects the public from impaired drivers *and swiftly removes them from our roadways*" (emphasis added). See also *People v. Moore*, 138 Ill. 2d 162, 166-67 (1990) (statutory summary suspension "serve[s] the salutary purpose of promptly removing impaired drivers from the road"). In other words, the purpose of statutory summary suspension is to ensure that drivers charged with DUI are removed from the roads not just *hopefully* or *eventually*, but *certainly* and *swiftly*. A prospective-only reading of "rescind" accomplishes this purpose far better than a retroactive one. This is because, under a prospective-only reading, a person who drives on a suspended license is subject to criminal penalties irrespective of whether the suspension is subsequently

---

[1]The dictionary entries cited above and provisions such as section 108A-1 undermine the sole premise informing the appellate court's analysis below, namely that "[b]oth common usage and the operation of the term in legal proceedings impute an intention to undo an action so that it never existed." 2012 IL App (5th) 100584, ¶ 16.

rescinded. In other words, under a *prospective-only* reading, the illegality of driving on a suspended license is *certain*. By contrast, under a retroactive reading, a person who drives on a suspended license is subject to criminal penalties only if the suspension is subsequently sustained. In other words, under a *retroactive* reading, the illegality of driving on a suspended license is *contingent*. The question therefore becomes, if the public policy that informs statutory summary suspension is to remove affected drivers from the roads as swiftly and as effectively as possible, which of the two readings of "rescind" is more likely to bring this about—the one that makes criminal culpability for driving on a suspended license *certain*, or the one that makes it merely *possible*? Clearly, it is the reading that makes criminal culpability *certain*, as drivers who know that driving on a suspended license is a crime irrespective of any future rescission are less likely to drive on a suspended license than are those who believe there is a chance of escaping criminal culpability for such conduct via rescission.

¶ 17    Second, a prospective-only reading of "rescind" best comports with other provisions of the Code relating to statutory summary suspensions. For example, section 2-118.1 of the Code states, *inter alia*, that a pending petition to rescind "shall not stay or delay the statutory summary suspension." 625 ILCS 5/2-118.1(b) (West 2008). As our appellate court has correctly recognized, "[t]his section implies a general legislative intent that suspensions shall remain in full force and effect *until proven to be invalid*." (Emphasis added.) See *People v. Focia*, 287 Ill. App. 3d 767, 769 (1997). Similarly, the driving on a suspended license statute makes it a crime for a person to "drive[ ] or [be] in actual physical control of a motor vehicle on any highway of this State *at a time when* such person's driver's license *** is revoked or suspended as provided by this Code or the law of another state." (Emphasis added.) 625 ILCS 5/6-303 (West 2008). The legislature's use of the phrase "at a time when" suggests that the dispositive fact in determining whether this offense has occurred is not the ultimate validity of the underlying suspension but rather *the existing status of the driver's license at the time of the arrest*. This, too, supports a reading of "rescind" that is prospective-only.

¶ 18    Third, a prospective-only reading of "rescind" best comports with this court's long-standing presumption that, when enacting a statute, the legislature does not intend to create absurd, inconvenient, or unjust results. See, *e.g.*, *People v. Jackson*, 2011 IL 110615, ¶ 15. Again, in section 11-501.1 of the Code, the legislature created a mechanism for summarily suspending the driver's license of a person charged with DUI. 625 ILCS 5/11-501.1 (West 2008). And in section 6-303 of the Code, the legislature then made it a crime for any person to drive or be in actual physical control of a motor vehicle "at a time when" such person's driver's license is suspended. 625 ILCS 5/6-303 (West 2008). A prospective-only reading of "rescind" makes this legislative scheme very easy and very convenient to enforce, as there is only one question to ask—what was the actual status of the driver's license at the time of the arrest, valid or suspended? The answer to this question will never change and will be readily available to the driver, to the officer on the scene, and to the court charged with adjudicating the offense. In other words, a prospective-only reading of "rescind" builds certainty and efficiency into the system. By contrast, a retroactive reading of "rescind" introduces both inefficiency and uncertainty into the system, thereby making the enforcement and administration of this very same legislative scheme highly inconvenient. Consider a driver

such as defendant in this case, who is pulled over for driving while his statutory summary suspension is in effect and charged with driving on a suspended license. And then consider that this same driver's petition to rescind is granted by the circuit court, that the circuit court is then reversed on appeal 18 months later by the appellate court, which is then reversed two years later by this court. Under a retroactive reading of "rescind," how is this driver's driving on a suspended license charge possibly adjudicated with any degree of economy, certainty, or convenience, as the facts underlying that charge remain in a perpetual state of flux and are nothing short of a judicial moving target? No, the far better policy flows from the conclusion we already have reached, namely, that in relation to the crime of driving on a suspended license, the rescission of a statutory summary suspension is of prospective effect only.

¶ 19 Finally, we note that a prospective-only reading of the term "rescind" is consistent with the way this court has characterized the statutory summary suspension scheme in previous decisions. In *McClure*, this court explained the process by which a driver challenges a statutory summary suspension and, in doing so, stated that a driver seeking to have the statutory summary suspension rescinded must file a petition "stat[ing] grounds upon which the summary suspension *should be lifted*." (Emphasis added.) *McClure*, 218 Ill. 2d at 380. Now admittedly, in *McClure*, this court was not adjudicating whether, for purposes of statutory summary suspension, the term "rescind" should be given a retroactive meaning or a prospective-only meaning. Nevertheless, this court's use of the term "lifted" in this context betrays an assumption that the legal consequences of rescission would be prospective-only and would not reach back to the time of arrest. See, *e.g.*, Black's Law Dictionary 1011 (9th ed. 2009) (defining "lift" as "[t]o stop or put an end to"). This assumption was correct, and what we assumed in *McClure* we now confirm today.

¶ 20                                                    CONCLUSION
¶ 21 For the reasons set forth above, we conclude that, in relation to the crime of driving on a suspended license, the rescission of a statutory summary suspension is of prospective effect only. Defendant's conviction for that crime in this case was proper, and we therefore reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 22 Appellate court judgment reversed.

¶ 23 Circuit court judgment affirmed.